IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| KIMBERLY W. WYNN,<br>　　　　　　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>WACHOVIA BANK, N.A, and<br>WELLS FARGO BANK, N.A.<br>　　　　　　　　　　　　　Defendants. | Civil Action Number 3:09CV136 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants's Rule 12(b)(6) Partial Motion to Dismiss (Doc. No. 5). For the reasons below, Defendants's Motion is GRANTED.

### **I. BACKGROUND**

Plaintiff Kimberly M. Wynn began her employment as a Lost-Stolen Analyst with the defendant, Wachovia Bank, N.A. ("Wachovia Bank" or "Wachovia") on October 1, 2007.[1] (Compl. ¶ 11.) In addition to being an employee of the bank, the Plaintiff was also a customer. On February 19, 2008, Plaintiff went to the Wachovia Bank branch at 9801 West Broad Street in Glen Allen, Virginia. The local Branch Manager stated she could not withdraw funds from her checking account because in May 2007, an insufficient check in the amount of $3,000.00 "had been deposited at Wachovia . . . and Wynn's license number [was placed] on the check." (Compl. ¶ 3d.) The Branch Manager then arranged a conference call with Wynn and a Wachovia Bank representative. During this

---

[1] In 2009, Wells Fargo Bank, N.A. ("Wells Fargo") acquired Wachovia Bank. (Pl.'s Compl., Ex. 1.) At the present time, the two banks are separate entities, but Wells Fargo has made plans to combine the two operations. (Id.) Therefore, Plaintiff contends that Wachovia Bank and Wells Fargo are jointly liable for all claims specified in the Complaint.

conversation, Wynn inquired as to why she was being notified of the insufficient check at such a late date. The representative did not have an explanation for the delay, but informed Wynn that she could either repay the $3,000.00 or resign from her job. Plaintiff declined to do either and stated she had no knowledge of or involvement in the "bad check."

Plaintiff telephoned her supervisor, Dorothy Camp, to notify her of the situation. Ms. Camp allegedly told Wynn she would look into the matter and Plaintiff should use her paid time off ("PTO") until Camp could determine what course of action to take. Specifically, Plaintiff contends she was in contact with Camp on February 20th, 21st, 26th, and 27th, and on these days was told to "call out." To utilize PTO, Wachovia employees may call an automated system and state the particular date or dates the employee will not be at work. This process is called "calling out." Plaintiff alleges Camp repeatedly directed Wynn to call out until the issue could be resolved, and further informed the plaintiff that she was making arrangements for Wynn to be paid her usual paycheck, in the amount of $844.00, on February 28, 2008. On that date, Wynn's paycheck was deposited into her Wachovia Bank account; however, on March 7, 2008, Wachovia debited the same amount from her account. After unsuccessful attempts to contact Camp or the Assistant Manager, Katrina Armstrong ("Armstrong"), Plaintiff spoke to "Tim," a Wachovia Bank employee in the Human Resources Department, on March 10, 2008. Tim informed the plaintiff that $844.00 was removed from her account because it was PTO she was not entitled to, and that she had abandoned her job as of February 28, 2008.

On March 13, 2008, Plaintiff again spoke to Camp. Camp stated she did not know about the funds being debited from Plaintiff's account, and allegedly told Plaintiff to continue to call out until the situation was resolved. That same day, Plaintiff received a letter from Wachovia stating she had not contacted her supervisor since February 25, 2008, and in accordance with bank policy, she was being terminated for abandonment of her position. Wynn then attempted to phone Camp, who did not return any of her phone calls. Since this time, Wachovia has sent Plaintiff collection notices claiming Wynn owes the bank for unauthorized PTO. As a result, Plaintiff brought this entitled action alleging Wachovia terminated her without just cause, committed a fraud in connection with the termination, wrongfully misappropriated funds in her bank account, breached its fiduciary duty as her employer and as her bank, and defamed her. Defendants's now move this Court to dismiss Plaintiff's defamation and breach of fiduciary duty claims, pursuant to Federal Rules of Civil Procedure 12(b)(6).

## II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard all factual allegations in the complaint as true, Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved consistent with those allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). These facts must be viewed in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002). However, since the complaint must give the defendant fair notice of the claim and the grounds upon which it rests, the

plaintiff must allege facts which show that the claim is plausible, not merely speculative. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964, 1966 (2007); see also Fed. R. Civ. P. 8(a)(2) (requiring pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). The court will not accept legal conclusions that are couched as factual allegations, Twombly, 127 S.Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Moreover, the plaintiff does not have to show a likelihood of success; rather, the complaint must merely allege—directly or indirectly—each element of a "viable legal theory." Twombly, 127 S.Ct. at 1969 n.8.

In the present matter, Defendants allege Plaintiff's Complaint should be dismissed as it fails to plead facts supporting a publication of the alleged defamatory statements, and incorrectly assumes that a fiduciary duty exists between Wynn and Wachovia. These claims will be addressed below.

**A. Defamation Claim**

Plaintiff claims Wachovia defamed her based upon two statements: (1) that Wynn was terminated from employment at Wachovia for "job abandonment," and (2) that Wynn had taken unauthorized PTO from Wachovia. (Compl. ¶ 15a.) Plaintiff alleges these statements were published "to Dorothy Camp, Katrina Armstrong, and other Wachovia employees, supervisors, and managers." (Id.) Further, Plaintiff argues Wachovia's characterization of her termination as job abandonment places "Wynn in the untenable position of having to defame herself when seeking employment elsewhere." (Id.) Finally, Plaintiff claims Wachovia "likely . . . falsely notified or will falsely notify prospective employers and third parties" of the basis for her termination. (Id. at ¶ 15b.)

4

This Court will review Plaintiff's defamation claim in accordance with Virginia law. Wiest v. E-Fense, Inc., 356 F. Supp. 2d 604, 608 (E.D. Va. 2005).

Under Virginia law, there is no distinction between libel and slander, and therefore, to state a claim for defamation, Plaintiff must allege enough facts to raise beyond a speculative level: "(1) publication of (2) an actionable statement with (3) the requisite intent." See Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005); Fleming v. Moore, 275 S.E.2d 632, 635 (Va. 1981). Though this Court makes no determination as to whether the statements are, in fact, "actionable," the Court holds that Plaintiff's allegations of self-publication, publication to Wachovia employees who have an interest in the matter, and likely future publication are not sufficient to satisfy the publication requirement of a defamation claim.

### Self-Publication

Publication occurs when an actionable statement is transmitted "to some third person so as to be . . . understood by such person." Thalhimer Bros. v. Shaw, 159 S.E. 87, 90 (Va. 1931); see also Snead v. Harbaugh, 404 S.E.2d 53, 55 (Va. 1991). Though the requirement that a defamatory statement be published is widely acknowledged, Virginia has not recognized a relatively new theory of self-publication—a theory Plaintiff relies on in her defamation claim. Rather, as Defendants correctly point out, the Circuit Court of the City of Salem has rejected the notion that self-publication can substitute for a published statement to a third person. Cybermotion, Inc. v. Vedcorp, L.C., 41 Va. Cir. 348, 348 (Va. Cir. Ct. 1997) (addressing the issue of "whether the theory of compelled self-publication by the Plaintiff can be a substitute for the requirement that the Defendant must publish the defamatory words to a third person. The answer is that it

cannot.") (internal quotations omitted). Similarly, in accordance with other decisions from this district, this Court declines to speculate on whether Virginia would adopt the self-publication doctrine, but instead will rely on the fact that Virginia *has not* adopted such a rule. See, e.g. Chadbourne v. Diggs, 2002 U.S. Dist. LEXIS 28157, at * 15 (E.D. Va. Nov. 21, 2002) (noting that "the compelled self-publication doctrine has failed to gain wide acceptance" and stating that the "Court is hesitant to predict that Virginia would adopt the compelled self-publication doctrine in the absence of any clear indication that Virginia would recognize such a claim."). Therefore, Plaintiff's claim that Wynn will be forced to defame herself is insufficient to support the publication requirement of a defamation claim.

### Employer's Qualified Privilege

Defendants further assert Plaintiff has failed to adequately plead the challenged statements were published to a third party, but rather only allege the statements were told to Wachovia employees, communication that is afforded a qualified privilege. This Court agrees.

The Virginia Supreme Court has advised that allegedly defamatory statements arising out of an employment relationship may be afforded a qualified privilege if the statement is made between persons on a subject in which they have an interest or duty. Union of Needletrades, Indus. & Textile Employees AFL-CIO v. Jones, 603 S.E.2d 920, 924 (Va. 2004). Here, Plaintiff states Wachovia has maliciously published the false grounds of Wynn's termination "to Dorothy Camp, Katrina Armstrong, and other Wachovia employees, supervisors, and managers." (Compl. ¶ 15a.) However, Plaintiff specifically identifies Camp and Armstrong as being involved in her termination; Camp

was her direct supervisor, and Armstrong was an Assistant Manager working for Camp, who Plaintiff contacted in reference to her termination. As such, communication to these individuals regarding the reasons for Wynn's termination is afforded a qualified privilege. Additionally, because Plaintiff has failed to make factual allegations as to who these "other" employees are, or the context in which they were made, the allegation as to these individuals fails to show the statements have been published or that the qualified privilege would not apply.

In order to defeat a qualified privilege, Plaintiff must allege facts sufficient to support a finding by clear and convincing evidence that the statements were made with actual, common-law malice. Echtenkamp v. Loudon County Pub. Sch., 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003); Gazette, Inc. v. Harris, 325 S.E.2d 713, 727 (Va. 1985) (noting that "[u]nlike some jurisdictions, Virginia does not permit a qualified privilege to be defeated upon a showing of mere negligence," but rather requires "proof of common-law malice, that is, behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made."). Repeated assertions that a party acted with malice or with a motive of personal spite is not sufficient; rather, such conclusory language does not state a claim for malice if the facts as alleged cannot support a finding as such. Echtenkamp, 263 F. Supp. 2d at 1062. Here, Plaintiff has failed to meet this pleading burden as no factual allegations in the Complaint support a finding of malice. Instead, Plaintiff merely concludes the statements were made "willfully, knowingly, and falsely," "maliciously," and "recklessly." (Compl. ¶ 15a–c.) Accordingly, Plaintiff has failed to plead malice sufficient to defeat this privilege, and therefore this communication does not constitute publication.

### Publication in the Future

Plaintiff has further alleged that "it is likely that Wachovia . . . has falsely notified or will falsely notify prospective employers and third parties that Wynn is not eligible for rehire at Wachovia because of unauthorized PTO debt, and that she abandoned her job." (Compl. ¶ 15b.)  As a claim of defamation cannot be based on speculation, this too is insufficient to satisfy the publication element of the claim.  <u>Twombly</u>, 127 S.Ct. at 1964 (noting that Plaintiff's allegations must be enough to raise a right to relief above the speculative level).

### B. Breach of Fiduciary Duty

Defendants's final contention requests this Court dismiss Plaintiff's breach of fiduciary duty claim against Wachovia, as the bank does not owe a fiduciary duty to Wynn as her employer or bank.   (<u>See</u> Compl. ¶ 14.)  This Court agrees.

The Supreme Court of Virginia has stated the relationship between a bank and its customer is not one of a fiduciary nature.  <u>See Deal's Adm'r v. Merchants' & Mechs. Sav. Bank</u>, 91 S.E. 135, 135 (Va. 1917) ("The relation between a bank and a depositor is that of debtor and creditor.  The deposit creates an ordinary debt, not a privilege or right of a fiduciary character.  It is a loan with the superadded obligation that the money is to be paid when demanded by check."); <u>see also Aldrich v. Old Point Nat'l Bank</u>, 35 Va. Cir. 545, 551 (Va Cir. Ct. 1993) ("There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship.").  As such, no fiduciary duty is created based on the banking relationship.

Similarly, while an employee owes a fiduciary duty to an employer, no corresponding duty is imposed on the employer. See Williams v. Dominion Tech. Partners, LLC., 576 S.E.2d 752, 757 (Va. 2003) ("We have long recognized that under the common law an employee, including an employee at-will, owes a fiduciary duty of loyalty to his employer during his employment."). Rather, the Circuit Court for the City of Norfolk has agreed that there is no general fiduciary duty from employer to employee. Starks v. McCabe, 49 Va. Cir. 554, 560 (Va. Cir. Ct. 1998) (stating no general fiduciary duty from employer to employee exists, and that if "the employer owed a fiduciary duty to the employee, it would be extraordinarily difficult, if not impossible, to terminate the employee, and this would be inconsistent with Virginia's historic policy of employment at will."). As such, Plaintiff's breach of fiduciary duty claim against Wachovia as her employer should be dismissed.

### III. CONCLUSION

For the reasons above, this Court GRANTS Defendants's Motion and DISMISSES WITHOUT PREJUDICE Plaintiff's defamation claim, as Plaintiff has failed to sufficiently plead the statements were published, and DISMISSES WITH PREJUDICE the breach of fiduciary duty claim, as no such duty exists between Wynn and Wachovia.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

Entered this   6th   day of May 2009.